The State v. Kelsey.

## THE STATE v. KELSEY, *Appellant.*

Criminal Law: PRIVATE BANKER: REVISED STATUTES, SECTION 1350. A private banker is not within the purview of Revised Statutes, section 1350, making it larceny for "any person, director, manager, cashier or other officer of any banking institution doing business in this state" to receive deposits, etc., after he shall have had knowledge of the fact that such banking institution is insolvent or in failing circumstances.

*Appeal from Cooper Circuit Court.*—HON. E. L. ED-WARDS, Judge.

REVERSED.

*J. L. Smith* and *John R. Walker* for appellant.

A private banker is not included within the provisions of Revised Statutes, 1879, section 1350. Section 27, article 12, of the constitution, only applies to officers of incorporated banks. Said article 12 is entitled "corporations" and every section in it has reference to some class of corporations (R. S., sec. 1350, *supra*), and upon which the indictment was drawn, was enacted to carry into effect the provisions of the constitution and must be held to include only the same class of persons. *State ex rel. v. Clark*, 54 Mo. 216; *State v. Pitts*, 51 Mo. 133. The word "manager" must be held to refer to an officer of an incorporated bank, as all the other officers named in the section are the officers of such a bank. *State v. Pemberton*, 30 Mo. 376; *St. Louis v. Laughlin*, 49 Mo. 559; *Jensen v. State*, 60 Wis. 577. That section 1350 does not include a private banker, see Thompson on Liability of Officers and Agents of Corporations, 545; *Hunts v. Divine*, 37 Ill. 137; *Bristol v. Barker*, 14 Johns. 204; *People v. Doty*, 80 N. Y. 225; *Codd v. Rathbone*, 19 N. Y. 37; *Hallett v. Harrower*, 33 Barb. 537; *Bank v. Magee*, 20 N. Y. 355; *Way v. Butterworth*, 106 Mass.; *Ohio, etc., v. Debolt*, 16 How. [U. S.] 438. At common law the right of banking belonged to the individual citizen and he could exercise it at pleasure. *Bank of Augusta v. Earl*, 13 Pet. 519.

*B. G. Boone*, Attorney General, for the state.

(1) The gist of the offence, as defined by section 1350, Revised Statutes, consists in the creation or assenting to the creation by a banker of a debt or indebtedness by his bank when he knew the same was at the time insolvent or in failing circumstances. This is clearly and affirmatively charged in the indictment;

the language of the statute is followed, and every fact and circumstance descriptive of the offence are stated. This renders the indictment sufficient. Where the statute creates an offence, as in this case, an indictment which follows the language of the statute is sufficient. *State v. Ware*, 62 Mo..597 ; *State v. James*, 63 Mo. 570 ; *State v. Scheineman*, 64 Mo. 386 ; *State v. Adcock*, 65 Mo. 590 ; *State v. Davis*, 70 Mo. 467 ; *State v. Tissing,* 74 Mo. 72 ; *State v. Madden*, 81 Mo. 421. (2) The indictment being clearly sufficient in form, it remains to be determined whether the law upon which it is based is applicable to and includes private bankers. The words used in the statute to designate the officers of any banking institution are as applicable to the officers of one kind of bank as another ; and it is so evident, from the use of the terms "bank or banking institution" in the section, that they are synonyms and may be used convertibly that comment would be superfluous. The terms used are of a general, well defined meaning, and comprise all those institutions, whether incorporated or not, which are authorized to receive deposits of money, to lend money and to issue promissory notes. Bouvier's Law Dic., tit. Bank ; *Oulton v. Sav. Institution*, 19 Wall. 116 ; *In re Leavenworth Sav. Bank*, 4 Dillon, 367 ; *First Nat. Bank v. Ocean Nat. Bank*, 60 N. Y. 278 ; *Rominger v. Keyes*, 73 Ind. 377. While it is a general rule that criminal statutes are to be construed strictly, there are exceptions. Thus, in construing statutes to prevent frauds, suppress public wrongs, or to effect a public good, objects which the law favors, there is a pressure towards a liberal interpretation. Bishop's Stat. Crimes [2 Ed.] secs. 198-9 ; *Gillett v. Moody*, 3 Com. 479. A general criminal law defining a crime and designating the class to which it shall be applicable will apply to those clearly designated by a subsequent statute as belonging to the class who after the enactment of

such subsequent statute violate the general law. *State v. Hays*, 78 Mo. 600; *Reg. v. DoubleJay*, 3 Ellis & E. 514.

NORTON, J.—The indictment in this case was found by the grand jury of Morgan county and is based on section 1350, Revised Statutes. On the trial of the cause in the Cooper county circuit court, where the cause had been transferred by change of venue, defendant was convicted, and the cause is before us on his appeal.

It appears from the record, and the fact is conceded by the Attorney General, that defendant was the owner of and conducting a private bank in the town of Versailles, Morgan county, under the name of J. B. Kelsey & Company, and it is claimed and insisted upon by counsel for defendant that his conviction under said section 1350, on which the indictment is based, is wrongful. In support of this contention it is argued that said section 1350 applies and was intended to apply only to those engaged in conducting incorporated banks, and not to persons engaged in conducting the business of private banking. This contention involves the construction of said section, which is as follows: "If any president, director, manager, cashier or other officer of any banking institution doing business in this state, shall receive or assent to the reception of any deposit of money or other valuable thing in such bank or banking institution, or if any such officer or agent shall create or assent to the creation of any debts or indebtedness by such bank or banking institution, in consideration, or by reason of which indebtedness, any money or valuable property shall be received into such bank or banking institution, after he shall have had knowledge of the fact that it is insolvent or in failing circumstances, he shall be deemed guilty of larceny, and upon conviction thereof, shall be punished in the manner and to the same

extent as is provided by law for stealing the same amount of money deposited, or valuable thing: provided, that the failure of any such bank or banking institution shall be *prima facie* evidence of knowledge on the part of any such officer or person that the same was insolvent or in failing circumstances when the money or property was received on deposit."

In determining the question whether it was the intention of the General Assembly in the above enactment to include only the president, directors, manager, cashier or other officers of incorporated banks, and not persons forming a voluntary association or partnership to engage in the business of private banking, we are justified in looking at the state of the law prior to the above enactment to discover the evil the statute was designed to remedy. Prior to 1870 the stockholders in an incorporated bank under the constitution of 1865 were only individually liable for the debts of the corporation to an amount double the amount of the stock owned by them in the corporation. In 1870 an amendment to the constitution of 1835 was adopted wherein it is declared that "in no case shall any stockholder be individually liable in any amount over and above the amount of stock owned by him or her," and in the case of *Schricker v. Ridings*, 65 Mo. 208, it was held "that under this amendment a stockholder is not liable for a debt of the corporation if he has paid the whole amount of stock subscribed or owned by him." The amendment adopted in 1870 was literally inserted in the constitution of 1875, and in view of the then existing state of the law, that the directors and managers of an incorporated bank held its capital stock and property in trust for creditors and stockholders, and that creditors could not hold the stockholders individually liable beyond or over and above the amount of stock owned by them, in order to secure a faithful administration of the trust and give to persons becoming creditors by depositing their money

in such banking corporation, an additional guarantee, section 27, article 12 of the constitution, was inserted in the constitution of 1875, and is as follows: * * * "It shall be a crime, the nature and punishment of which shall be prescribed by law, for any president, director, manager, cashier or other officer of any banking institution, to assent to the reception of deposits, or the creation of debts by such banking institution, after he shall have had knowledge of the fact that it is insolvent, or in failing circumstances; and any such officer, agent or manager, shall be individually responsible for such deposits so received, and all such debts so created with his assent."

Said article 12 is entitled corporations, and is devoted to that subject, and contains twenty-seven sections, the first eleven of which are devoted to corporations generally, the next thirteen to railroads; and the next three to banks, of which section 27 above quoted is one. The irresistible inference to be drawn from this is, that the words banking institution were intended to apply only to incorporated banking institutions. This inference is strongly supported by the further fact that it only declares it to be a crime for any "president, director, manager or other officer" of any banking institution to assent to the reception of deposits, etc. All the persons above designated are such as are necessarily connected with incorporated banks, as will be seen by reference to sections 906 and 909, Revised Statutes, article 7, providing for the incorporation of banks. Said section 906 provides that "the affairs and business of such corporations shall be managed by a board of directors or managers;" and said section 909 provides that "the board of directors shall furnish a statement * * * certified under oath * * * by the president and cashier of the actual condition of such corporation." *State ex rel. v. Clark*, 54 Mo. 216; *State v. Pemberton*, 30 Mo. 376; *State v. Pitts*, 51 Mo. 133.

That incorporated banking institutions were the
only banking institutions intended to be embraced in
said section 27 is further, if not conclusively, shown by
the provision contained in it "that any such officer,
agent or manager shall be individually responsible for
such deposits so received and all such debts so created
with his assent." As the liability of the owners of a
private bank for its debts is not limited to the actual
amount of capital invested by them in the business, but
extends individually to each and all of them to the ex-
tent of subjecting what each or all of them may own to
the payment of its debts, it was a work of supererogation
to add the above words to the section, if private banks
were intended to be included in the words banking insti-
tution. The liability of persons engaged in conducting
a private banking business for payment of debts con-
tracted is just the same as that of partners conducting
any other business. It is provided in said section 22,
article 12, which is one of the sections relating to rail-
roads, that, "No president, director, officer, agent or
employe of any railroad company shall be interested in
furnishing materials or supplies to such company." *
* * Can it be pretended that any other than an in-
corporated railroad company was intended by the use of
the words "any railroad company?" We think not.
*McNichol v. U. S. Mercantile Agency*, 74 Mo. 463.
From the fact that said section 27 is found in an article
of the constitution devoted to "corporations," and the
further fact that all the persons designated in the sec-
tion are necessarily connected with the business of con-
ducting an incorporated bank, in view of these facts and
in consideration of the object sought to be accomplished
by the section, we are of the opinion that the words
"banking institutions" used in the section were in-
tended only to embrace incorporated, and not private,
banks. This conclusion would be fortified by the de-
bates of the convention if we were at liberty to refer to
them.

The only remaining question in this branch of the case is, did the legislature, in the enactment of section 1350, *supra*, which constitutes the basis of this prosecution intend to go further and include private banks. We are of the opinion that it did not, and for the following reasons: In 1876, in the case of *Fusz v. Spaunhorst*, it was held by the circuit court that said section 27 of the constitution was not self-enforcing, but that it requires legislation to enforce it, which judgment was subsequently affirmed by this court in 67 Mo. 256. Thereafter the General Assembly, in 1877, enacted a statute for this purpose, which was carried with a slight amendment, into the Revised Statutes of 1879 as section 1350, which is copied in the first part of this opinion, and upon which the indictment in this case is based; that the purpose of the legislature was only to give efficacy and force to the constitutional provision, we think it manifest from the language used in said section 1350.

It will be observed that the statute provides that: "If any president, director, manager, cashier or other officer of any banking institution," following literally the language employed in section 27 of the constitution, from which we must presume that they were used in the same sense they were used in said section 27. If, as we have shown, that the words, any banking institution, as used in section 27 of the constitution referred, and were intended to refer to incorporated banks only, and not to private banks, it follows necessarily that the same words used in the same connection by the legislature in passing section 1350 to put in force said section 27 must be construed the same way and as meaning the same thing in the statutory enactment that we have shown they mean in the organic law, from which they were exactly and literally copied.

It will be observed that said section 27 created both a criminal and civil liability for doing the acts therein

The State ex rel. v. O'Brien.

specified, and the correctness of the conclusion above announced may be further demonstrated by the fact that the same legislature which passed section 1350 to enforce the criminal liability created by said section 27, also passed section 918, article 7, Revised Statutes, page 163, to enforce the civil liability, which was also created by section 27, and in effect declared under the rule, *expressio unius exclusio alterius*, that said section 918 should not apply to private banks by providing in section 924 that certain other sections of the same article, viz: sections 909, 910, 911 and 912 should apply to private bankers. If the legislature, in the passage of said section 918, did not intend to make it apply to private bankers, I am unfamiliar with any process of reasoning, which would justify the conclusion that they did intend that section 1350, passed at the same session to enforce criminal liability, should apply to such bankers.

For the reasons given the judgment is reversed and the prisoner discharged. All concur.