## THE STATE v. BUCK, *Appellant.*

DIVISION TWO.

1. **Criminal Law:** INSOLVENT BANK: RECEIVING DEPOSITS. Under Revised Statutes, 1879, section 1350, as amended by the act of 1887 (Laws, p. 162), making it unlawful for the officers of any bank "or the owner, agent or manager of any private bank or banking institution" to receive deposits, knowing such bank to be insolvent, the owner of a private bank is liable though he was doing unauthorized business, not having complied with the requirements of the statute in the organization of his bank.

2. **Criminal Practice:** CHANGE OF VENUE. A criminal cause cannot be removed from one county to another by mere stipulation of parties; an order of court directing the change is essential.

*Appeal from Harrison Circuit Court.*—HON. C. H. S. GOODMAN, Judge.

REVERSED AND REMANDED.

*J. C. Wilson* and *L. H. Waters* for appellant.

(1) The circuit court of Harrison county had no jurisdiction of the cause. *First.* While the transcript from DeKalb county recites that the indictment in this case was returned and gives a copy of it, no further reference to, or mention of, this case is made therein. *Second.* The transcript was not sufficient to confer jurisdiction. *Third.* The transcript was not certified as required by law. R. S. 1889, sec. 4166. *Fourth.* By the term "proceedings" is meant the orders in a cause. *Beers v. Houghton,* 9 Peters, 368; *Smith v. Jeffries,* 25 Ind. 376. *Fifth.* The court had no jurisdiction unless the transcript conferred it. *Snitzer v. Downing,* 80 Mo. 588; *Bray v. Marshall,* 66 Mo. 122; *Henderson v. Henderson,* 55 Mo. 534. (2) No crime was charged in the indictment. *First.* "Incorporated

banks" and "private bankers" are alone authorized to carry on a banking business in this state. R. S. 1879, secs. 901, 921. *Second.* The act of 1877 had no application to "private bankers." *State v. Kelsey,* 89 Mo. 623. *Third.* The term " private banker " was defined, and his duties, with respect to the commencement and conduct of the business, were prescribed by statute. R. S. 1879, secs. 921, 922. *Fourth.* The amendment of 1887 failed to extend the provisions of the act of 1877 so far as to embrace a "private banker." Laws, 1887, sec. 1, p. 162. *Fifth.* The act of 1889 is equivalent to a legislative declaration that a "private banker" was not within the provisions of the act of 1887. Sutherland on Stat. Con. 229 ; *Pike v. Megown,* 44 Mo. 491 ; *Railroad v. Railroad,* 53 Pa. St. 20 ; *State v. Oskins,* 28 Ind. 364 ; R. S. 1889, sec. 3581 ; *State v. Webster,* 77 Mo. 566. *Sixth.* The liability of a "private banker" is not limited to the amount invested in the business, but is just the same as that of partners conducting any other business. *State v. Kelsey,* 89 Mo. 623. (3) The "Stewartsville Bank" had no legal existence. It could neither sue nor be sued, and an allegation that "it" was in failing circumstances or insolvent could have no legal significance, and the act of 1887 can only apply to such banking institutions as have a legal existence, and may be insolvent or in failing circumstances, and cannot be extended by implication.

*John M. Wood,* Attorney General, for the State.

(1) The transcript was properly certified to the Harrison circuit court. (2) The indictment is drawn under section 1350, Revised Statutes, 1879, as amended in 1887 (Laws, 1887, p. 162), and follows the language of the statute, and is sufficient. The case of *State v. Kelsey,* 89 Mo. 623, does not apply to this indictment, as the statute has since been amended so as to apply to private bankers. In view of the amendment of the statute, we

fail to see any merit in the numerous objections urged by appellant to the sufficiency of the indictment. (3) No error was committed in introducing the certificate showing when the parties commenced doing a banking business as private bankers. It was only introduced for the sole purpose of showing when they commenced business, and certainly defendant could not have been prejudiced by it. (4) The instructions given by the court on the part of the state and the defendant fully and properly declared the law, and no error was committed in refusing the other instructions asked by defendant. (5) The kind of money received by the bank was immaterial, and it was not necessary to prove it. R. S., secs. 4111, 4114.

MACFARLANE, J. — Defendants were indicted in DeKalb county under section 1350 as amended by the act of 1887, for receiving deposits as private bankers when the "Stewartsville Bank" of which they were owners and managers was insolvent or in failing circumstances. Seven indictments were found against them, numbered from one to seven inclusive. A severance was granted at the April term, 1888, and defendant filed an application for a change of venue in case number 6, from that county. No order was made on this application until May 22, 1889, when a change of venue was granted to Harrison county. By agreement of the parties the application filed in case number 6 was to apply in the other cases against defendant.

A transcript of the record and proceedings in case number 2 was filed in the Harrison county circuit court, December 4, 1889. This transcript included the proceedings which resulted in the change of venue in case number 6, and the record entry that the application in that case should apply to all other cases. The circuit clerk of DeKalb county certified that the transcript was a true copy of the original proceedings as the same appeared of record and on file in his office.

The indictment copied in the transcript charged that "Harvey S. Buck and Thomas G. McCrosky, late of the county aforesaid, on the first day of December, 1887, at the county of DeKalb, and state aforesaid, being then and there owners and managers of a private bank, known as the Stewartsville Bank, the same being a banking institution, doing business in said county, a certain deposit of money, to-wit, $150 lawful money of the United States, of the value of $150, the money and property of Thomas Allen, unlawfully and feloniously did assent to the taking, having and receiving on deposit, in said Stewartsville Bank, a private banking institution, after said Harvey S. Buck and Thomas McCrosky, owners and managers as aforesaid, had knowledge of the fact and well knew that said Stewartsville Bank was then and there in failing circumstances, and so the said Harvey S. Buck and Thomas G. McCrosky, aforesaid, the money aforesaid, to-wit, $150, of the value of $150, the money and property of said Thomas Allen, in manner aforesaid, unlawfully and feloniously, did steal, take and carry away, against the peace and dignity of the state."

A motion was made to quash the proceedings on the ground that there was no properly certified copy of the record and proceedings of the DeKalb circuit court in the cause on file in the court. This motion was overruled, and defendants filed a motion to quash the indictment for the reasons, as assigned, that it charged no facts which constitute a crime under the laws of this state ; the law does not apply to a private banker, nor to a firm of individuals doing a banking business ; it was not charged that defendants as owners of the bank were previously insolvent or in failing circumstances ; it was not charged that defendants were private bankers as defined by statute. This motion was also overruled.

The case was tried, defendant found guilty and sentenced to two years' imprisonment in the penitentiary, and from the sentence he appealed to this court.

I. The indictment is under section 1350, Revised Statutes, 1879, as amended by the act of 1887, page 162. This act was itself amended in the revision of 1889, section 3581, after the commission of the offense with which defendant was charged. That section now stands as follows:

"If any president, director, manager, cashier or other officer of any banking institution, *or the owner, agent or manager of any private bank or banking institution* doing business in this state, shall receive or assent to the reception of any deposit of money or other valuable thing in such bank or banking institution, or if any such officer, *owner* or agent shall create or assent to the creation of any debts or indebtedness by *any* such bank or banking institution, in consideration or by reason of which indebtedness any money or valuable property shall be received into such bank or banking institution, after he shall have had knowledge of the fact that (such banking institution or the owner or owners of any such private bank) is insolvent or in failing circumstances, he shall be deemed guilty of larceny, and upon conviction thereof shall be punished in the same manner and to the same extent as is provided by law for stealing the same amount of money deposited, or valuable thing: *provided,* that the failure of any such bank or banking institution shall be *prima facie* evidence of knowledge on the part of any such officer or person that the same was insolvent or in failing circumstances when the money or property was received on deposit."

The words italicized show what was added to section 1350, Revised Statutes, 1879, by the act of 1887, and the words included in parentheses indicate the amendment made to the act of 1887 in the revision of 1889, which are substituted for the word "it" in the original.

The objection urged to the sufficiency of the indictment is that it does not charge that the Stewartsville

Bank, of which defendant is charged with being an owner, was regularly and legally organized as a private bank under the laws of the state authorizing them. The charge is very distinctly made that defendants were the owners and managers of a private bank known as the Stewartsville Bank, the same being a banking institution doing business in the county. This might be a sufficient charge that the bank was regularly organized, but as the evidence shows that it was not, though doing business as one, we will consider the question whether the conviction was proper under the indictment and evidence.

Under the law as it stood prior to the amendment of 1887, the case of *State v. Kelsey*, 89 Mo. 623, was decided at the October term, 1886. It was held in that case, NORTON, J., writing the opinion, that section 1350 only applied to incorporated banking institutions and not to private banks and bankers, though doing business under authority of law. The amendment of March 18, 1889, following so closely upon that decision was evidently suggested by it, and was intended to remedy a defect shown to exist in the law as it was when the decision was rendered. Private banks and bankers are clearly brought within the terms of the amended act.

It is now insisted that private bankers who have fully complied with the law in the organization of their banking institutions are alone subject to prosecution under this section, and those who are carrying on an unauthorized banking business are wholly exempt.

The argument for this position is drawn in part from the decision in the *Kelsey case, supra*, and in part from the amendment made to the law in the revision of 1889. It is contended. that, as the law of 1879 only applied to regularly incorporated banks, the amendment of 1887 was only intended to extend its application to regularly organized private banks ; that when private banks were designated only those recognized by law were meant. This view, it is insisted, is strengthened

by the amendment of 1889, making it unlawful for owners of private banks to receive deposits when either the bank or the owner is in failing circumstances.

Private bankers are defined by section 921 to be those who "carry on the business of banking by receiving money on deposit," etc.   Section 922 forbids any person to engage in the business of banking as private bankers, unless they first make, acknowledge and have recorded the sworn statement required by that section, and section 924 provides that private bankers who fail to make and file the statement required by section 923 shall be deemed guilty of a misdemeanor.   Then the act of 1887, under which defendant is prosecuted, makes the owner of any private bank doing business in this state liable for receiving deposits when such bank is insolvent or in failing circumstances.   It thus appears that private banks and bankers are recognized as such, though they may be acting "of their own wrong," and without the sanction of the law.   The legislature clearly intended to bring all persons who did a banking business, as specified in section 922, within the terms of the act of 1887, and subject them to the punishment therein imposed for its violation.

The state has adopted no system for the supervision of banks and the banking business, and for the detection and suppression of illicit banking other than the imposition of penalties for such wrong doing.   If those doing unauthorized banking could thus escape the penalties of the law, but few would be found who would not take advantage of the indemnity thus afforded.   We are able to see nothing in the amendment of 1889 which gives a legislative construction to the act of 1887 inconsistent to the views herein expressed.   There is no inconsistency between the two acts ; the latter merely extends the conditions upon which it would be unlawful to take deposits to the insolvency of the owners if private bankers.   We think the indictment good.

II. It is clear from the transcript of the records and proceedings in the courts of DeKalb and Harrison counties on file in this court, that indictment number 2 was preferred by a grand jury of DeKalb county, which alone had original jurisdiction ; and that the trial and sentence were under proceedings had upon that indictment in Harrison county. The question is then whether it appears from the whole record that the circuit court of Harrison county had jurisdiction to hear and determine the case.

The only proceeding known to the law by which the circuit court of DeKalb county could have been divested of its jurisdiction, and that of Harrison county could, at the same time, have acquired jurisdiction, was by an order of the former changing the venue of the case to the latter. *Snitjer v. Downing*, 80 Mo. 588; *Stearns v. Railroad*, 94 Mo. 319.

The transcript shows no order changing the venue in the indictment designated in the record as number 2 upon which defendant was tried and convicted, and, unless the order made in indictment number 6, and the stipulation of the parties, to the effect that the application made in that case should apply to all the others then pending, were sufficient to give the Harrison county circuit court jurisdiction of all the cases, the proceedings of the court and conviction of defendant was without jurisdiction.

In the first place it will be noticed that the stipulation is confined to the application, and only declares, or implies, that but one application should be required, but a proper order in each case was not waived, if a waiver could have been made.

An examination of the statute fails to disclose any authority for a removal of a criminal cause from one county to another by simple stipulation of the parties. The court must also agree, "and every order for the removal of a cause, if made in term, shall be entered on

the minutes" ( R. S. 1879, sec. 1863), "and shall specify the cause of the removal and designate the county to which the cause is removed." Sec. 1860. It is thus clear that unless an order was made in the case tried the court that tried it had no jurisdiction.

It is insisted by the attorney general that the style of all the cases was the same, viz., "State of Missouri *v.* Harvey S. Buck and Thomas G. McCrosky," and that the regularity and sufficiency of the transcript is in no way impaired or affected by an indiscriminate use of the numbers of the indictment. This position is not tenable. The different indictments may have been for entirely different offenses. The numbers given to the indictments were intended to keep the proceedings thereon independent of and distinct from each other, in order that an acquittal on one should not bar a prosecution on another. Each indictment made a separate and distinct case to be proceeded on independently of any other.

The record before us fails to show a removal of the cause from the DeKalb circuit court, and, consequently, the judgment was not authorized. The judgment reversed and cause remanded. All concur.